UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| BLOCKHEADS BURRITOS, INC. AND BENNY'S BURRITOS, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| -against- | ) ) ) |
| CONTINENTAL CASUALTY COMPANY AND VALLEY FORGE INSURANCE COMPANY, | ) ) ) ) ) |
| Defendants. | ) ) ) |

No. 15-cv-7386

**COMPLAINT**

**Jury Trial Demanded**

_____

Plaintiffs Blockheads Burritos, Inc. ("Blockheads") and Benny's Burritos, Inc.

("Benny's") (collectively, the "Insureds"), by and through their attorneys, Hoguet Newman

Regal & Kenney, LLP, as and for their Complaint against Defendants Continental Casualty

Company ("Continental") and Valley Forge Insurance Company ("Valley Forge") (collectively,

"CNA"), allege as follows:

## INTRODUCTION

1.      This is a civil action alleging claims for declaratory relief, breach of contract, and

breach of the implied covenant of good faith and fair dealing against CNA.

2.      The Insureds seek monetary relief and all other appropriate remedies to which

they are entitled under New York law, including: (i) a declaration that CNA is obliged to

indemnify the Insureds for their loss of property and business income caused by an explosion at a

Consolidated Edison Company of New York, Inc. ("Con Ed") substation located at 14th Street

and Avenue C in New York, New York ("Avenue C Substation") and the ensuing loss of

electricity and other necessary services to Blockheads and Benny's, ordinarily provided by Con Ed through the Avenue C Substation; (ii) money damages for Valley Forge's breach of an insurance policy issued to Blockheads requiring Valley Forge to indemnify Blockheads with respect to its property damage and business interruption losses, including loss of gross earnings and extra expenses incurred as a result of the power outage resulting from the explosion at the Avenue C Substation and the action of civil authority; (iii) money damages for Continental's breach of an insurance policy issued to Benny's requiring Continental to indemnify Benny's with respect to its property damage and business interruption losses, including loss of gross earnings and extra expenses incurred as a result of the power outage resulting from the explosion at the Avenue C Substation and the action of civil authority; and (iv) money damages for CNA's breach of the implied covenant of good faith and fair dealing for failing to fully investigate the proximate cause of the explosion at the Avenue C Substation.

3.      Blockheads and Benny's continued to suffer losses that are covered by the Policies' extended period of liability coverage through November 2012 that CNA has neither adjusted nor paid.   Blockheads incurred at least $75,000 in losses and Benny's sustained at least $75,000 in losses.

4.      On or about October 29, 2012, Superstorm Sandy hit the Tri-State area, leaving behind massive property damage and the loss of electricity to various residences and places of business.   Specifically, the Insureds each suffered substantial property damage and business interruption losses as a direct result of the loss of electricity and other necessary services ordinarily provided by Con Ed.

5.      From on or about October 29, 2012 through November 2012, the Insureds sustained substantial property damage and lost income.   As required by the terms of the

Insureds' insurance policies with CNA, CNA was obliged to reimburse and indemnify the Insureds for these losses but has since refused to provide any coverage despite its contractual obligations.

6.      In the aftermath of Superstorm Sandy, Mayor Michael Bloomberg issued and continued orders that restricted access to much of Manhattan, including Blockheads' and Benny's locations, which resulted in their suffering business interruption and physical damages that are covered by the Policies.

### THE PARTIES

7.      Plaintiff Blockheads Burritos, Inc. transacts business in the State of New York with its principal place of business in New York City.

8.      Plaintiff Benny's Burritos, Inc. transacts business in the State of New York with its principal place of business in New York City.

9.      Plaintiffs Blockheads and Benny's are jointly owned and managed.

10.      Upon information and belief, Continental is a corporation organized under the laws of Illinois with its principal place of business at 333 S. Wabash Avenue, Chicago, Illinois 60604.   Upon information and belief, Continental is licensed and/or authorized to sell insurance to individuals and entities located in New York, New York

11.      Upon information and belief, Valley Forge is a corporation organized under the laws of Pennsylvania with its principal place of business at 333 S. Wabash Avenue, Chicago, Illinois 60685.   Upon information and belief, Valley Forge is licensed and/or authorized to sell insurance to individuals and entities located in New York, New York.

12.      Upon information and belief Continental and Valley Forge are both members of the CNA Financial Corporation.

3

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Valley Forge, because Valley Forge is authorized to transact, and regularly does transact, business within New York State and New York County, and furthermore, Blockheads claims herein arise out of a contract with Valley Forge to sell insurance coverage in New York County.

14.     This Court has personal jurisdiction over Continental, because Continental is authorized to transact, and regularly does transact, business within New York State and New York County, and furthermore, Benny's claims herein arise out of a contract with Continental to sell insurance coverage in New York County.

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as this is a civil action between diverse parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## FACTUAL ALLEGATIONS

**The Nature of the Insureds' Business**

16.     Blockheads and Benny's operate highly popular burrito restaurants located at 499 Third Avenue and 111-113 Greenwich Avenue, respectively.

17.     Like any modern restaurant, Blockheads and Benny's require and utilize large quantities of electricity in their operation.   The Insureds rely on Con Ed and its infrastructure (including the Avenue C Substation that exploded during Superstorm Sandy) for the delivery of electricity.

18.     Based on their own prior experience and economic trends, Blockheads and Benny's are able to and do forecast their revenues with high levels of accuracy.

**The Substation Explosion Substantially Disrupts Blockheads and Benny's Businesses.**

19.     After several days of forecasts, Superstorm Sandy made landfall in Manhattan on Monday, October 29, 2012.   During the period immediately preceding the storm, Blockheads and Benny's began making preparations for Superstorm Sandy.

20.     On October 29, 2012, Blockheads and Benny's each lost electricity on or around 8:30 p.m.   Upon information and belief, this timing corresponds directly with the timing of the explosion of the Avenue C Substation, which numerous reliable media outlets report as having occurred just prior to 8:30 p.m.

21.     Upon information and belief, shortly prior to the explosion, Con Ed made the decision to voluntarily and deliberately shut down some of its Substations supplying electricity to tens of thousands of customers in far lower Manhattan and Brooklyn, in an effort to preempt damage to its electrical equipment.

22.     Upon information and belief, Con Ed did not voluntarily or deliberately shut down the Avenue C Substation.

23.     Upon information and belief, after several days, Con Ed had made the necessary repairs to the Avenue C Substation to resume provision of electricity to Blockheads and Benny's and their surrounding area.

24.     Blockheads and Benny's partially reopened for business on November 3, 2012.

25.     Superstorm Sandy and the corresponding power outage resulted in Blockheads suffering at least $75,000 in property damage and business interruption loss and Benny's suffering at least $75,000 in property damage and business interruption loss, based on Insureds' standard periodic and highly accurate projections.

**Blockheads and Benny's Are Covered Under CNA's Policies.**

26.     During the relevant period, Blockheads and Benny's purchased the Policies.

27.     Blockheads purchased Policy Number 2099586784 from Valley Forge, with a policy period of December 20, 2011 through December 20, 2012 ("the Valley Forge Policy").

28.     Benny's purchased Policy Number 2099586865 from Continental with a policy period of December 20, 2011 through December 20, 2012 (the "Continental Policy") (together with the Valley Forge Policy, the "Policies").

29.     The Policies provide for property coverage and business interruption.

30.     The business interruption portion of the Policies covers "the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during "the period of restoration," so long as the loss is caused by or results from a "Covered Cause of Loss."

31.     The Policies specifically provide that even when coverage for damage due to flood is excluded, "if water . . . results in fire, explosion . . . not otherwise excluded, we will pay for the loss or damage caused by that fire, explosion . . . ."   <u>Section B. Exclusions, B.1g. Water</u>. Fire and explosion are "Specified Causes of Loss" and are not excluded by the Policies.

32.     The Policies are also endorsed with SB146826-B ("Civil Authority").   On October 28, 2012, Mayor Michael Bloomberg ordered a mandatory evacuation, which took effect at 7 p.m., of all people who lived or worked in certain parts of eastern and lower Manhattan.   The orders by civil authority prohibiting access to much of Manhattan were issued (and remained in place) as a result of documented physical damages arising from hazards including wind, debris, damaged structures, and utility failures, as well as general concerns for the safety and welfare of the public.   As a result of the action of civil authority and the extended period of liability commencing once the order was lifted, Blockheads and Benny's sustained business income

losses that CNA has not appropriately adjusted or paid.

33.     The Insureds have paid all premiums due under the Policies and complied with any and all applicable conditions precedent under the Policies.

**CNA Denies Coverage to Blockheads and Benny's**

34.     On or about November 3, 2012, the Insureds duly submitted a loss notification to CNA ("Proof of Loss").

35.     CNA denied coverage under the Policies for Blockheads' and Benny's losses, respectively.   In its denial of coverage, CNA relied on the Policies' "flood" exclusion, stating that the loss of power to Blockheads and Benny's was "caused by flood damage to equipment owned by utility service provider, Con Edison."   CNA also referenced "public information available through [Con Ed's] website confirming all outages that were caused by flooding."   The information on Con Ed's website purporting to support CNA's position simply stated—without any explanation—that "all outages in Manhattan were caused by flooding with the exception of the two areas shown below."

36.     On or about July 7, 2015, CNA re-denied coverage under the Policies for Blockheads' and Benny's losses, respectively.

37.     Upon information and belief, the power loss was, in fact, not directly "due to" flooding, but to the explosion that occurred at the Avenue C Substation.   More specifically, the proximate cause of the prolonged power outage in lower Manhattan and resultant interruption to the Insureds' business operations was the Avenue C Substation's explosion.

38.     In fact, in an interview published in the October 30, 2012 edition of The Wall Street Journal, Con Ed's Senior Vice President of Electric Operations, John Miksad, stated that he believed the cause of the Avenue C Substation's explosion was "most likely flying debris,"

although flooding made it difficult for Con Ed to make repairs.

## FIRST CAUSE OF ACTION
### Declaratory Relief
### (As Against CNA)

39.     The Insureds restate and incorporate the allegations in Paragraphs 1 through 38 as if fully set forth herein.

40.     As a result of the loss of electricity following the Avenue C Substation explosion, Blockheads suffered at least $75,000 in property damage and business interruption loss and Benny's suffered at least $75,000 in property damage and business interruption loss, plus pre- and post-Judgment interest thereon.

41.     CNA agreed to cover the Insureds for their property damage and business income losses incurred as a result of interruption to the Insureds' business operations stemming from off-premises service interruption.

42.     An actual and justiciable controversy presently exists between the Insureds and CNA concerning the obligations of CNA to pay for the losses suffered by the Insureds as a result of the Avenue C Substation explosion and resulting power outage.   The Insureds contend that CNA has such an obligation.   CNA disputes this claim and has denied coverage on the ground that the off-premises service interruption was "due to" flood and thereby excluded from coverage under the Policies.

43.     The Policies contain no exclusions to coverage when a fire and/or explosion occur at an off-premises service provider's facilities resulting in a power outage and interruption to the Insureds' business operations.

44.     The Insureds seek Declaratory Judgment that: (i) the proximate and efficient cause of the prolonged power outage and interruption to the Insureds' business was the Avenue C

8

Substation explosion and not a "flood"; (ii) there is no applicable exclusion to coverage under the Policies, when off-premises service interruption is due to an explosion at a public utility's off-premises location; and (iii) CNA are obliged to reimburse the Insureds for losses arising from property damage and the interruption to the Insureds' businesses sustained as a result of the Avenue C Substation explosion.

45.     The issuance of declaratory relief by this Court, and compliance by CNA with such relief should be sufficient to terminate the existing controversy between the Insureds and CNA.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (As Against Valley Forge)

46.     The Insureds restate and incorporate the allegations in Paragraphs 1 through 45 as if fully set forth herein.

47.     The Valley Forge Policy issued to Blockheads constitutes a valid and enforceable contract between Blockheads and Valley Forge.

48.     Blockheads timely made all premium payments to Valley Forge and fully performed all of their obligations under the Valley Forge Policy.

49.     Valley Forge is obliged to indemnify Blockheads for its property damage and loss of business income incurred in connection with the Avenue C Substation explosion on October 29, 2012 and the action of civil authority.

50.     Valley Forge breached the Valley Forge Policy by failing and refusing to indemnify Blockheads for its covered losses, incurred as a result of Blockheads' loss of electricity caused by the October 29, 2012 Avenue C Substation explosion and the action of civil authority.

51.     As a direct and proximate result of Valley Forge's breach of the Valley Forge

Policy, Blockheads has suffered and will continue to suffer consequential damages including

legal fees and costs, expenses in litigation, and other economic damage in an amount of at least

$75,000.00 and to be determined at trial.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(As Against Continental)**

52.     The Insureds restate and incorporate the allegations in Paragraphs 1 through 51

as if fully set forth herein.

53.     The Continental Policy issued to Benny's constitutes a valid and enforceable

contract between Benny's and Continental.

54.     Benny's timely made all premium payments to Continental and fully performed

all of their obligations under the Policies.

55.     Continental is obliged to indemnify Benny's for its property damage and loss of

business income incurred in connection with the Avenue C Substation explosion on October 29,

2012 and the action of civil authority.

56.     Continental breached the Continental Policy by failing and refusing to indemnify

Benny's for its covered losses, incurred as a result of the loss of electricity caused by the

October 29, 2012 Avenue C Substation explosion and the action of civil authority.

57.     As a direct and proximate result of Continental's breach of the Continental

Policy, Benny's has suffered and will continue to suffer consequential damages including legal

fees and costs, expenses in litigation, and other economic damages in an amount of at least

$75,000.00 and to be determined at trial.

## FOURTH CAUSE OF ACTION
### Breach Of Implied Covenant Good Faith And Fair Dealing
### (As Against CNA)

58.     The Insureds restate and incorporate the allegations in Paragraphs 1 through 57 as if fully set forth herein.

59.     The Policies as a whole contain an implied covenant of good faith and fair dealing, whereby CNA agreed to act in good faith, deal fairly with the Insureds, and refrain from taking any action that would interfere with the Insureds' rights under the Policies as to coverage for losses suffered by the Insureds.

60.     CNA has breached its implied duty of good faith and fair dealing to the Insureds, as follows, by:

    a)  unreasonably, and without proper cause, withholding benefits provided under the Policies;

    b)  engaging in a self-serving and unreasonable interpretation of the language contained in the Policies in direct contravention of the meaning of policy terms, so as to justify excluding coverage;

    c)  failing to carry out a proper investigation as to the direct and proximate cause of the explosion at the Avenue C Substation and instead solely relying on the Con Ed's self-serving statements regarding the cause of power loss, and arbitrarily and irrationally rendering its determination that the power outage and resultant business interruption suffered by the Insureds was "due to" flooding;

    d)  by improperly and unfairly requiring that the Insureds spend their own resources to mitigate business interruption losses that CNA were legally obligated to mitigate under the Policies; and

11

e)   forcing the Insureds to institute litigation to recover amounts due under the

Policies.

61.   As a direct and proximate result of the unreasonable and bad faith conduct of

CNA, the Insureds have suffered and will continue to suffer consequential damages including

legal fees and costs, expenses in litigation, and other economic damages in an amount to be

determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Blockheads and Benny's respectfully request that this Court

enter Judgment in their favor against CNA as follows:

A.   As to its First Cause of Action, declaring that (i) the proximate and efficient cause

of the prolonged power outage and interruption to the Insureds' businesses was the Avenue C

Substation explosion and not a "flood"; (ii) there is no applicable exclusion to coverage under

the Policies when off-premises service interruption is due to an explosion at a public utility's

off-premises location; and (iii) CNA is required to reimburse the Insureds for losses arising from

the interruption to the Insureds' businesses sustained as a result of the Avenue C Substation

explosion;

B.   As to its Second Cause of Action, awarding economic and consequential

damages against Valley Forge including legal fees and costs, expenses in litigation, and other

economic damages in favor of Blockheads, in an amount to be determined at trial;

C.   As to its Third Cause of Action, awarding economic and consequential damages

against Continental including legal fees and costs, expenses in litigation, and other economic

damages in favor of Benny's, in an amount to be determined at trial;

D.   As to its Fourth Cause of Action, awarding economic and consequential damages

against CNA including legal fees and costs, expenses in litigation, and other economic damages in an amount to be determined at trial;

     E.     As to all Causes of Action, awarding the Insureds pre-Judgment interest, legal costs, expenses, and attorneys' fees, where and as appropriate; and

     F.     Granting the Insureds such further relief as this Court may deem just and proper.

## JURY DEMAND

The Insureds hereby demand a trial by jury.

Dated: September 17, 2015

HOGUET NEWMAN REGAL
& KENNEY, LLP

By: _____
     Andrew N. Bourne, Esq. (AB-9774)
     Joshua L. Blosveren, Esq. (JB-6194)
     Lauren S. Suss (application to be submitted)
10 East 40th Street
New York, New York 10016
(212) 689-8808
abourne@hnrklaw.com

*Attorneys for Plaintiffs Blockheads Burritos, Inc. and Benny's Burritos, Inc.*